[Crim. No. 1597. First Appellate District, Division Two.—January 23, 1931.]

THE PEOPLE, Respondent, v. VINCENT LUCICH, Appellant.

294

Thomas P. Boyd, Webster Clark and Roy C. Lewis for Appellant.

U. S. Webb, Attorney-General, Lionel Browne, Deputy Attorney-General, Henry E. Greer, District Attorney, and Robert Duke, Special Prosecutor, for Respondent.

NOURSE, P. J.—Defendant was charged with the crime of murder. He was tried before a jury which returned a verdict of guilty and he was sentenced to imprisonment for life. He appeals from the judgment and from the order denying his motion for a new trial.

There is not, and could not well be, upon the record before us, any claim that the evidence adduced at the trial was insufficient to support the verdict, and it will, therefore, be unnecessary to state the evidence at length.

The deceased, one M. G. Sturtevant, was jointly indicted with a number of others for conspiracy to violate the federal prohibition laws in the operation of a still and in the manufacture of illicit liquor. Pending the trial of these defendants in the federal court at San Francisco the deceased turned state's evidence and voluntarily testified

against his co-defendants. While that trial was pending the deceased and a Mrs. Berri met the appellant in San Francisco and discussed the trial, the deceased's connection with it as a witness, and the fact that Mrs. Berri was unable to appear as a witness in that case because her husband was one of the defendants on trial, but that she had information valuable to the government which she might disclose. Two days later, at the invitation of the appellant, the deceased drove Mrs. Berri and appellant to a secluded spot on Tomales Bay in Marin County on the pretense that appellant would show the deceased where illicit liquor could be hi-jacked, and upon appellant's promise that he would engage with the deceased to hi-jack liquor which was to be landed at Tomales Bay by a group of bootleggers who employed appellant to protect the landings.

On the trip to Tomales Bay the deceased carried a 38-caliber S. & W. pistol. The gun was lying on the floor of the car and was a topic of conversation on the way over. When the party was ready to return to San Francisco with the deceased in the driver's seat with both hands on the steering wheel, Mrs. Berri seated beside him and appellant standing on the left side of the car beside the driver, the appellant suddenly shot the deceased in the chest and as Mrs. Berri jumped from the car he shot her. She escaped with a severe wound, but the appellant continued shooting at the deceased. When he found that his victim was dead he dragged him into an old shack, took the car of the deceased and drove to his apartment in San Francisco. When the body of the deceased was found it was badly mutilated in addition to the wounds caused by gun fire.

The first point raised is that the trial court erred in admitting in evidence a copy of the indictment in the federal court. The offer was made for the purpose of showing motive. Evidence had theretofore been received that the appellant had boasted that he was a gunman for a "gang" of liquor smugglers, and that, on the trip to Tomales Bay, he put on a pair of dark glasses and requested the deceased to drive over a back road because "he didn't want any of his gang to recognize him." It was the theory of the state that the appellant, being a member of a gang of rum runners, racketeers and hi-jackers, was interested in

closing the lips of another member of such a gang who was about to give damaging testimony against his associates. We are not now concerned with the weight of the evidence to prove this theory—the single question is whether it was material and competent. Upon this point the authorities support the respondent and appellant has cited none to the contrary.

The general rule applicable is stated in *People* v. *Soeder*, 150 Cal. 12, 15 [87 Pac. 1016, 1017], where the Supreme Court say: "Evidence having a direct tendency, in view of the surrounding circumstances, to prove motive on the part of a person for a crime, and thus to solve a doubt 'either as to identity of the slayer, the degree of the offense, the insanity of the defendant, or to the justification or excusability of his act,' is admissible against a defendant, however discreditably it may reflect on him, and even where it may show him guilty of other crimes. (See *People* v. *Cook*, 148 Cal. 334 [83 Pac. 43, 46, 50]; *People* v. *Suesser*, 142 Cal. 354, 363 [75 Pac. 1093].)" In *People* v. *O'Bryan*, 165 Cal. 55, 59 [130 Pac. 1042], it was held that, for the purpose of showing motive, it was competent for the state to show that the defendant was a member of a labor union on strike against a manufacturing corporation of which the deceased was a nonunion employee. To the same effect is *People* v. *Grow*, 16 Cal. App. 147, 149 [116 Pac. 369], and in *People* v. *Jo Fong*, 59 Cal. App. 259, 271, 272 [210 Pac. 548], it was held that the state could show that deceased was a member of a Chinese tong and that the defendants were members of a rival tong.

The question of the competency of the evidence presents no difficulties. The copy of the indictment was the best evidence of the charge pending in the federal court. As to the materiality of the evidence, it having been shown that the deceased and Mrs. Berri discussed the federal prosecution with appellant before the fatal ride, and had discussed the character of the case and the deceased's relations to it, the copy of the indictment was merely corroborative evidence showing the nature of the case which was under discussion.

The second and third objections go to the admission of the minutes of the federal court showing that deceased had been sworn as a witness in the first trial and of a

portion of his testimony showing the damaging admissions he made against his associates. In both instances the evidence offered was the best evidence which could have been had for the purpose, while its materiality to the issues on trial is determined by what we have said regarding the indictment.

The suggestion is made that the trial court erred in refusing appellant's request to read the cross-examination of the deceased in the federal court, but it is merely a suggestion. We have frequently said that it is incumbent upon the appellant to show both error and prejudice. Such has been the rule since *People* v. *Brotherton,* 47 Cal. 388, 404, and more particularly since the enactment of section 4½ of article VI of the Constitution.

Finally it is argued that the trial court erred in sustaining the objection to a question asked by appellant of the witness Berri on cross-examination. This witness was the same woman who accompanied appellant and the deceased on the fatal ride. Her testimony was clear and convincing. The appellant admitted the shooting and set up a wholly improbable story of self-defense. Presumably for the purpose of impeaching the witness she was asked if she had been on terms of illicit intimacy with the deceased. The objection was properly sustained. The witness had already testified that the deceased was one of her best friends and that, as to the appellant she had "a feeling of loathsomeness toward him for the cowardly way in which he murdered Mr. Sturtevant and tried to murder me". There could have been no doubt in the minds of the jury as to the interest or feeling of the witness, and the question objected to was designed merely to degrade her. On this point the case is in line with *People* v. *Smith,* 61 Cal. App. 259, 266 [214 Pac. 468].

The judgment and order are affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 7, 1931.