John Daniel CARR, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17980.

United States Court of Appeals
Ninth Circuit.

May 22, 1963.

Bertram I. Rowland, San Francisco, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief Criminal Section, John A. Mitchell, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, HAMLEY and MERRILL, Circuit Judges.

BARNES, Circuit Judge.

Appellant was charged with four armed robberies of Savings and Loan Associations insured by the Federal Savings and Loan Insurance Corporation (18 U.S.C. § 2113(a)). There were four counts:

I, on January 22, 1960, at American Savings and Loan Association, Whittier, California;

II, on November 1, 1960, at American Savings and Loan Association, Whittier, California;

III, on September 15, 1961, at Home Savings and Loan Association, Buena Park, California; and

IV, on October 6, 1961, at Continental Savings and Loan Association, Pico Rivera, California.

Counts I, II and III were tried on appellant's first trial, and Count IV at a second and separate trial.

Appellant was convicted on four counts, and sentenced to twenty years imprisonment on Counts I and II, to be served concurrently, and ten years on Counts III and IV, to be served concurrently with each other and consecutively to Counts I and II.

Jurisdiction below rested on Section 3231, Title 18 United States Code, and on appeal on Section 1291, Title 28 United States Code.

Appellant urges four errors:

*First:* Error in admission of evidence as to his association with one Thompson, "an alleged conspirator." [1]

*Second:* Error in admission as irrelevant of evidence as to appellant's possession of $2,100 in $20 bills *at the first trial* of Counts I, II and III, on the assumption appellant obtained the bills at the robbery described in Count IV (despite an admitted lack of any objection having been made to the evidence (Brief, p. 26)).[2]

*Third:* Error in permitting testimony at the first trial of admissions of appellant with respect to other armed robberies, past or planned. (The only objection made was "immateriality"; the theory under which the evidence was offered was to prove mental intent, or state of mind.)

*Fourth:* Error in the first trial (on Counts I, II and III) in denying the motion for new trial because of:

(a) insufficiency of the evidence with respect to "positive" identification;

(b) error in the production of statements and admissions of appellant, as testified to by witnesses "of questionable character" who were "hostile";

(c) "the alleged admissions [of past robberies] were generally remote in time from the date of the robberies" charged.

The fourth alleged error clearly relates to the weight to be given various testimony; and not to its admissibility. As counsel admits, the identification testimony was probative but not conclusive without extrinsic evidence. The one case cited by appellant is United States v. Washington, 7 Cir., 253 F.2d 913, 915, reversed, 357 U.S. 348, 78 S.Ct. 1373, 2 L.Ed.2d 1368. It is one of the few examples of an appellate court reversing precisely on the insufficiency of the evidence. What the Supreme Court actually reversed on, in our opinion was a *total* lack of credible evidence against the defendant Fred Washington. The case against him rested solely on the authenticity of a phone call, with which he was connected by the testimony of two government agents (that they (Heisig and Mattera) recognized Fred Washington's voice over the telephone, though they had never heard it before, and couldn't identify it until they subsequently heard it again). Mrs. Kernick, who had placed the phone call, testified that she had talked to *Leon* Washington, not *Fred,* his brother. Fred testified he had not talked to Kernick. Leon testified he had talked with Kernick. *Leon* was not a defendant. The conversation itself was short. (Thirty-five words, or twelve seconds.) The government agents had no ear phones, but *each* put their heads close to Mrs. Kernick's ear.

As the dissenting opinion in the Court of Appeals points out, Fred Washington was convicted in this narcotics case. He never had physical possession of any narcotics. He had no record of previous violation. The dissenting opinion recognizes, (as does counsel for appellant in his brief in this instant case) that "as a general rule," or "ordinarily," where the evidence is conflicting, an appellate court must accept that which is most favorable to the government, but not where "the physical facts of a situation are such as to make the oral testimony utterly unbelievable." In other words, the conflict in evidence can be so slight or ridiculous as to become de minimis as a matter of law. We find no such factual situation presently before us, and we hold Washington v. United States, 357 U.S. 348, 78 S.Ct. 1373, 2 L.Ed.2d 1368, has no application to the facts of this case.

■ If we consider the appellant's fourth point to be an alleged general insufficiency of the evidence; as raised in appellant's "Questions Presented," (Br., p. 25), over and beyond the specific alleged deficiencies urged in specification

1. There was no conspiracy alleged in any count, and no coconspirator named in any count.

2. In fact, counsel for appellant specifically stated he had no objection (Tr., p. 293, l. 20) to Lawrence's testimony.

of error number four (Br. p. 27) and "summary of argument" (Br. pp. 28, 29), there still exists no failure of proof. We are, of course, required to view the evidence in the light most favorable to the government. Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Mosco v. United States, 9 Cir. 1962, 301 F.2d 180.

■ Appellant does not contend the evidence introduced at the second trial was insufficient to convict. His complaint goes only to the first trial. A careful reading of the transcript reveals more than sufficient substantial evidence to convict. If the jury believed appellant's alleged companions in crime (Tulleys, Lawrence, Haegeman, Davis and Thompson), Carr was not only guilty— he was the ring leader of the "gang"— its leading spirit. These five witnesses had been convicted of crimes. The jury knew this, yet apparently chose to believe them, along with the many other witnesses (including disinterested college students, police officers and Carr's wife) rather than Carr himself. The jury was not required to believe either side of the case. It made its decision, on conflicting evidence. Such determination of fact is binding on this court, unless clear error existed. We find none. We think, were we independent discoverers of the facts, our determination would be in accord with that of the jury and the trial judge. It stretches our credulity to believe *all* these witnesses were angry with defendant Carr; and hence would lie about him; that Mrs. Bonsall's employer's record showing she did not take a Friday off in September 1961 was false, and hence Carr's story he had helped her move on a Friday (September 15, 1961) was true (thus creating an alibi for Count III, and if such records were correct, destroying his same alibi). Nor are we impressed with the truthfulness of Carr's ready explanation as to the rapid change in his financial condition from pawning his watch and ring in late December 1959 to buying a car for cash within a month and two days after the January 22, 1960 armed robbery; all allegedly due to Carr's good luck at the gambling tables.

The argument in support of the first alleged error is a reiteration of a *part* of the evidence introduced, which was most favorable to appellant,[3] and omits much that was unfavorable. All was relevant. Not a single case is cited to support appellant's position. It needs no comment other than our announcement the appellant's position goes entirely to the weight to be given the evidence, and argument as to irrelevancy is legally completely untenable on appeal.

■ Appellant is in a dilemma in his second point. He denied the fourth robbery, yet urges us the money he had after it occurred *must* have come to appellant by way of it, and hence it was error to permit mention of such money on the first trial relating to the first three robberies. We find nothing in the record of the first trial to prove where the $2,100 in $20 bills actually came from, other than inferences.

Appellant's failure to object at the trial (Brief, p. 30) discloses how weak his present objection and position is. The one case he relies on, Boyer v. United States, D.C.Cir. 1942, 76 U.S.App.D.C. 397, 132 F.2d 12, 13, is good law, but inapposite here. We find no merit in the point.

■ Appellant's third alleged error is likewise without merit. A previous crime of a similar nature is not an "unrelated" crime, as that term is used in this area of the law. Cf. Smith v. United States, 9 Cir. 1949, 173 F.2d 181.

■ Testimony as to what appellant *stated* (as was here introduced) was relevant on the issue of motive, intent,

---

**3.** For example, counsel refers (Brief, p. 30) to the lack of testimony that defendant possessed large sums of money available for gambling at Gardena on January 23, 1960. He omits reference to appellant's possession of sufficient sums of money to purchase an automobile for cash on January 24, 1960. The first robbery occurred January 22, 1960, as we have noted, supra.

underlying scheme or design and identity. Toles v. United States, 9 Cir. 1962, 308 F.2d 590, 593.

And see our recent discussion re unrelated crimes in Enriquez v. United States, 9 Cir., 1963, 314 F.2d 703.

If this were a civil appeal, we would be inclined to penalize counsel for appellant for a frivolous appeal. This is not a civil appeal. A careful reading of a large record convinces us the case was carefully and properly tried, and appellant received a completely fair trial. There was no error.

The judgments of conviction are affirmed.